CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

IVANA DJAK (NYBN 5516687)
Assistant United States Attorney

1301 Clay Street, Suite 340S
Oakland, California 94612
Telephone: (510) 637-3918
FAX: (510) 637-3724
ivana.djak@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CARSON FRIES,<br><br>Defendant. | CASE NO. 26-CR-231 HSG<br><br>UNITED STATES' SENTENCING MEMORANDUM<br><br>Date: November 4, 2026<br>Time: 2:00 p.m.<br>Judge: Hon. Haywood S. Gilliam Jr. |

## INTRODUCTION

Defendant Carson Fries is a drug dealer who trafficked large quantities of methamphetamine in the Bay Area. Between August 29, 2025 and September 9, 2025, the Defendant sold a Drug Enforcement Administration ("DEA") Confidential Source ("CS") controlled substances three times in Bay Point, California. The Defendant was charged with and ultimately pleaded guilty to Possession with Intent to Distribute 50 Grams and More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii)).

The Defendant's conduct is serious and warrants a substantial term of incarceration. Based on the nature and circumstances of the offense, and the Defendant's acceptance of responsibility, the government submits that a custodial sentence of 78 months' imprisonment to be followed by four years

of supervised release, is sufficient, but not greater than necessary, to achieve the goals set forth in 18 U.S.C. § 3553(a).

## BACKGROUND

### I. Offense Conduct – The Defendant Sold Large Quantities of Methamphetamine

Between August 29, 2025, and September 9, 2025, the Defendant sold drugs to a DEA CS on three occasions. Presentence Investigation Report ("PSR") ¶ 6. The CS was a drug trafficker and knew the Defendant to be a crystal methamphetamine source of supply. The CS had performed multiple multi-pound methamphetamine transactions with the Defendant over the course of several years. *Id.* ¶ 7.

On August 29, 2025, the Defendant sold approximately 478.8 gross grams of methamphetamine to the CS for $1100. *Id.* ¶¶ 9–11. On September 3, 2025, the Defendant sold approximately 518.2 gross grams of methamphetamine to the CS for $1100. *Id.* ¶¶ 14–16. On September 9, 2025, the Defendant sold approximately 506.8 gross grams of methamphetamine to the CS for $1100. *Id.* ¶¶ 17–20. All the drugs were confirmed to be methamphetamine by laboratory testing. *Id.* ¶¶ 13, 16, 19.

On September 24, 2025, the Defendant's residence was searched pursuant to a search warrant. An additional 160.1 grams of methamphetamine were found at the Defendant's residence. A large cache of weapons, specifically 33 firearms and a large stockpile of ammunition, were also found in the Defendant's residence and garage. *Id.* ¶ 20.

### II. Criminal History

The Defendant was convicted of felony obstructing and resisting law enforcement and carrying a loaded firearm in 2012. He was sentenced to 180 days in custody and two years' probation. The obstruction conviction was subsequently recategorized as a misdemeanor in 2021. PSR ¶ 37. The Defendant was also convicted of misdemeanor obstructing and resisting law enforcement in 2014. He was sentenced to 30 days in custody and three years' probation. *Id.* ¶ 38. He was arrested for being a prohibited person in possession of firearms and ammunition in 2017, 2019, and 2023. *Id.* ¶ 40.

### III. Procedural Posture

On September 22, 2025, the government charged the Defendant in a criminal Complaint with violations of 21 U.S.C. § 841(a)(1), (b)(1)(B)—Distribution of 500 Grams and More of a Mixture or

Substance Containing a Detectable Amount of Methamphetamine. Dkt. No. 1. On May 12, 2026, the Defendant was charged in a one-count Information with Possession with Intent to Distribute 50 Grams and More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii)). Dkt. No. 37.

On July 29, 2026, the Defendant pled guilty to Count One of the Information pursuant to a plea agreement. Dkt. Nos. 50, 51. Sentencing is set for November 4, 2026.

## ARGUMENT

### I. Legal Standard

The United States Sentencing Guidelines serve as "the starting point and initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court is to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991 (citation omitted). In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), which include (among other factors):

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;
>
> (4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

### II. Sentencing Guidelines Calculation

As set forth in the PSR, the Sentencing Guidelines calculations for Defendants offense level is as follows:

| | **U.S.S.G. Section** | **Level/Points** |
|---|---|---|
| Base offense level | USSG §§2D1.1(a)(5), (c)(4) – 1.5 kg to 5kg weight | 32 |

| | | |
|---|---|---|
| Specific offense characteristics | U.S.S.G. § 2D1.1(b)(1) – possessing firearm during offense | +2 |
| Acceptance of responsibility | § 3E1.1 | -3 |
| Total offense level | | 31 |

PSR ¶¶ 25–34.

The Probation Officer concluded that Defendant's criminal history score is zero, and he therefore falls into Criminal History Category I. *Id.* ¶ 39. As reflected in the PSR, the Guidelines range for imprisonment associated with adjusted offense level 31 and Criminal History Category I is 108 to 135 months of incarceration. *Id.* ¶ 67. The Probation Officer recommends a 60-month sentence, representing a substantial 44 percent downward variance. *Id.* at Sentencing Recommendation.

In the Plea Agreement, the parties contemplated a total offense level of 29 (not including the two-level enhancement for possession of firearms). *See* Dkt. No. 51. The Guideline range for imprisonment associated with adjusted offense level 39 and Criminal History Category I is 87 to 108 months. The government agrees that Probation's calculation is correct. However, in accordance with the Plea Agreement, the government recommends 10 percent below the low end of the range associated with a total offense level of 29 and Criminal History Category I, which is 78 months in custody, to be followed by four years of supervised release.

**III. The United States' Sentencing Recommendation**

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends a custodial sentence of 78 months imprisonment——to be followed by a four-year term of supervised release. This sentence accounts for a 10 percent downward variance from the advisory guideline range. Consistent with 18 U.S.C. § 3553(a), such a sentence is sufficient, but not greater than necessary, to reflect the seriousness of the offense and to provide deterrence, but also to account for relevant mitigating factors.

The Defendant's conduct is serious. The Defendant was an established drug dealer in the Bay Area. The CS had previously made multi-pound drug purchases from the Defendant and considered him a supplier. The Defendant sold the CS large quantities of drugs on at least three occasions.

Additionally, the Defendant incurred a felony conviction in 2012 and was arrested at least three times for unlawfully possessing firearms. There could have been no confusion that the Defendant was not permitted to possess firearms. Which makes it even more troubling that 33 firearms and a large cache of ammunition were recovered from his residence when it was searched. The illegal possession of firearms by a drug dealer poses a grave danger to the public, and a substantial sentence is warranted to promote respect for the law and afford general deterrence. *See* U.S.S.G. § 3553(a)(1), (a)(2)(A)–(B).

On the other hand, the Defendant has taken responsibility for his criminal misconduct. And a sentence of 78 months will be the Defendant's most serious sentence to date. The government is optimistic that this case will serve as an inflection point for the Defendant.

Probation's recommended 44 percent downward variance is not justified in this case. The average length of imprisonment imposed in comparable cases is 85 months. PSR ¶ 83. The government's proposed sentence of 78 months already represents a substantial downward variance

**CONCLUSION**

For the foregoing reasons, the government recommends that the Court sentence Defendant to 78 months in prison followed by a four-year term of supervised release.[1]

DATED: October 28, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

/s/
IVANA DJAK
Assistant United States Attorney

[1] The Defendant requests to self-surrender after the New Year, but the Plea Agreement provides that the Defendant will be remanded at sentencing. Plea ¶ 10.